IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

DARRELL A. THOMPSON,

        Plaintiff,

v.                               CIVIL ACTION NO.   3:20-0699

CSX TRANSPORTATION, INC.,
a Florida corporation,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant CSX Transportation Inc.'s Motion for Summary

Judgement. ECF No. 31. For the following reasons, the motion is **GRANTED**.

**I. BACKGROUND**

Plaintiff Darrell A. Thompson (Plaintiff) was hired by Defendant in 2006 as a Plant

Manager in the Barboursville Bridge Shop. *Pl.'s Dep.*, ECF No. 32-3, at 20–21. The Bridge Shop

manufactures parts and structures for bridges across Defendant's railway system. *Id.* at 23.

Plaintiff was the sole manager responsible for managing seventeen employees at this location. *Id.*

at 23–24; *Sparks' Dep.*, ECF No. 32-7, at 80. Plaintiff reported to the Assistant Chief Engineer of

Structures, Ed Sparks (Sparks), from 2012 until 2017. *Pl.'s Dep.*, ECF No. 32-3, at 21. Plaintiff

then reported to Jacob Metcalf (Metcalf). *Id.* at 23. When Plaintiff first started at the Bridge Shop

in 2006, senior foremen, clerks, and other employees were employed there. *Sparks' Dec.*, ECF No.

32-9, ¶ 4. However, over the years, these senior employees retired. Plaintiff became the most

tenured employee at the Bridge Shop, having worked for Defendant for fourteen years. Both

Sparks and Metcalf reference this "generational shift" in communications regarding Plaintiff's

performance. *See Sparks' Dep.*, ECF No. 32-7, at 143–44, *see Ex. B*, ECF No. 32-12, at 7 (email from Metcalf referencing the "generational shift").

Every year Plaintiff received a performance rating. The following reflects those ratings:

| Year | Performance Score |
|------|-------------------|
| 2012 | 3.3 out of 4 |
| 2013 | 3.2 out of 4 |
| 2014 | Sometimes Achieved Expectations |
| 2015 | Achieved Expectations |
| 2016 | Exceeded Expectations |
| 2017 | Achieved Expectations |
| 2018 | Sometimes Achieved Expectations |
| 2019 | Sometimes Achieved Expectations |

*Sparks' Dep.*, ECF No. 32-7, at 49. A "Sometimes Achieved Expectations" review represents a score of a two out of five. *Id.* at 48. Sparks testified that any time an employee failed to meet expectations, this would be a negative review. *Id.* at 51.

In February of 2019, Plaintiff was counseled on and received a poor performance warning. *Ex. B*, ECF No. 32-12, at 10–11; *Metcalf's Dec.*, ECF No. 32-10 ¶ 3. This document outlined five points of concern, including: 1) poor communication; 2) lack of accountability regarding quality issues and miscues; 3) a sense of confusion and disarray at the shop; 4) lack of presence on the shop floor; and 5) daily attendance, shop schedule, and shop practices issues. *Ex. B*, ECF No. 32-12, at 10–11. Two or three weeks before he received this poor performance review, Plaintiff alleges that Sparks visited the Bridge Shop and questioned Plaintiff about his age and his plans for retirement. *Pl.'s Dep.*, ECF No. 32-3, at 34–35; *see Pl.'s Compl.*, ECF No. 1, ¶¶ 8–11.

Following the performance warning, Defendant documented several issues with Plaintiff's performance. Metcalf received feedback indicating that Plaintiff continued to fail to hold the Bridge Shop employees accountable for miscues, which was identified as an area of improvement in the performance warning. *Metcalf's Dec.*, ECF No. 32-10, ¶ 4. Plaintiff was also notified of issues with painting procedure by the Bridge Shop that were supposed to have already been eliminated. *Ex. B*, ECF No. 32-12, at 29–30. Plaintiff did not timely follow up with the answers requested about the painting issue, and Sparks had to reach out again to Plaintiff. *Id.* at 29. Further, several employees at the Bridge Shop wrote a letter raising concerns about communications between the employees and the management at the Shop. *Ex. B*, ECF No. 32-12, at 41–42. Both lack of communication and accountability concerning quality issues were areas of improvement identified by the February 2019 performance warning. *Id.* at 10.

In July 2019, Metcalf visited the Bridge Shop and discovered that employees were smoking inside a temperature-controlled paint-storage facility. *Metcalf's Dec.*, ECF No. 32-10, ¶ 6; *Ex. B*, ECF No. 32-12, at 8–9. Metcalf had specifically indicated in the performance warning that employee entitlement and setting clear expectations were areas of improvement for Plaintiff. *Ex. B*, ECF No. 32-12, at 10.

In November of 2019, Sparks sent an email to Plaintiff expressing concerns about costs with the Bridge Shop. *Id.* at 26. Sparks also visited the Bridge Shop in November and noted that Plaintiff closed himself off in his office with the blinds shut, which Sparks took to reflect his lack of presence on the shop floor, as was identified in the performance warning. *Sparks' Dec.*, ECF No. 32-9, ¶ 8; *Ex. B*, ECF No. 32-12, at 5.

Then, in January of 2020, Metcalf sent an email to Plaintiff expressing continued frustrations with respect to issues with overtime documented by Bridge Shop employees. *Ex. B*,

ECF No. 32-12, at 28. Maintaining the shop schedule was an area of improvement identified by the 2019 performance warning. *Id.* at 11. Metcalf also counseled Plaintiff with respect to missing work without providing notice. *Metcalf's Dec.*, ECF No. 32-10, ¶ 8; *Ex. B*, ECF No. 32-12, at 27. Additionally, Metcalf noted that he counseled plaintiff regarding misuse of overtime, which was identified in the performance warning. *Metcalf's Dec.*, ECF No. 32-10, ¶ 7.

In addition to these documented issues with Plaintiff's performance, Defendant hired an auditor to evaluate the Bridge Shop in August of 2019. This evaluation revealed that the shop had no documented process for tasks. *Ex. B*, ECF No. 32-12, at 33. The performance warning identified "improved processes" as an area of improvement. *Id.* at 11.

Metcalf detailed these numerous issues with Plaintiff's performance in an email sent to Heather Gravelle (a human resources business partner) and Sparks to initiate Plaintiff's termination. *Id.* at 7–9. In this email, he reiterates several deficiencies in Plaintiff's performance, including:

- Unaccountability (always having excuses, does not get involved, delegates duties, remains unavailable, has questionable attendance)
- Lack of interest in job (lack of morning production meetings, no production flow, no plan to meet scheduled dates, has foreman provide reports for Friday calls, cannot answer most questions)
- Lack of communication (remains in office or runs errands, does not communicate with team)
- Lack of discipline (shop employees set own production rate/schedule or run their own program, no structure to shop responsibility, multiple problems with payroll and billing, few testing failures only after direct encouragement from superiors)
- Lack of skills (lacks skills to thrive in the shop management setting, fails to apply effort in self-betterment or learning)

*Id.* at 7–8. The nature of these complaints appeared ongoing. *See Pl.'s Dep.*, ECF No. 32-1, at 109 (discussing how Plaintiff was non-responsive to project status updates for three consecutive months in 2018), *id.* at 110 (discussing issues with payroll back in 2018), *id.* at 113–14 (discussing production issues in 2018). Metcalf's email also summarized some of the documented incidents

with Plaintiff that Metcalf noted. This list included:

- When Plaintiff missed work without informing a supervisor
- The payroll issues with overtime
- The numerous complaints Metcalf has received about Plaintiff's lack of communication, to the point that field supervisors did not even attempt to communicate with him, in addition to the Union complaint that highlighted the mishandling of employee issues
- When Plaintiff allowed an impromptu Union meeting during work hours which resulted in a cussing match
- Plaintiff's lack of initiation with respect to updating the shop schedule spreadsheet
- When employees were found smoking inside the temperature-controlled paint storage facility, highlighting the sense of entitlement among craft employees
- Lack of housekeeping and organization

*Ex. B*, ECF No. 32-12, at 8. In addition to the issues Metcalf and Sparks observed, there were incidents at the Bridge Shop where several employees reached out and raised complaints about Plaintiff. Some of these complaints concerned an issue of alleged unfair treatment and harassment of a Mr. Jason Adams by Plaintiff. *Pl.'s Dep.*, ECF No. 32-1, at 52–61. An investigation of this complaint determined that such complaint was "unsubstantiated," but this investigation revealed communication and relationship issues between Plaintiff and the Bridge Shop employees. *See Sparks' Dep.*, ECF No. 32-7, at 175–185.

Plaintiff was terminated on February 19, 2020. *Gravelle's Dep.*, ECF No. 32-5, at 14; *see Pl.'s Dep.*, ECF No. 32-1, at 62. Present at Plaintiff's termination were Jacob Metcalf, Diane Esque, and Chris Bowens. *Gravelle's Dep.*, ECF No. 32-5, at 19.

Plaintiff filed this action for age discrimination on October 19, 2020. *Pl.'s Compl.*, ECF No. 1.

## II. STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the

evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

When West Virginia's legislature enacted the West Virginia Human Rights Act (WVHRA), W. Va. Code § 5-11-1 et seq. (1979), it declared that "[i]t is the public policy of the State of West Virginia to provide all of its citizens equal opportunity for employment, equal access to places of public accommodations, and equal opportunity in the sale, purchase, lease, rental and financing of housing accommodations or real property." W. Va. Code § 5-11-2. The WVHRA prohibits employment discrimination on the basis of race, religion, color, national origin, ancestry, sex, age, blindness, disability, and familial status. W. Va. Code § 5-11-9(1); W. Va. Code § 5-11-3(h).

WVHRA claims are analyzed using the Title VII burden-shifting framework set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 902 (1973);

*Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152, 159–60 (W. Va. 1995). Under this framework, the plaintiff asserting a claim for employment discrimination has the burden of establishing an "inference of discrimination by establishing a prima facie case." *Barefoot*, 457 S.E.2d at 160. To make a prima facie case, the plaintiff must show:

> (1) That the plaintiff is a member of a protected class.
> (2) That the employer made an adverse decision concerning the plaintiff.
> (3) But for the plaintiff's protected status, the adverse decision would not have been made.

*Conaway v. E. Assoc. Coal Corp.*, 358 S.E.2d 423, 429 (W. Va. 1986); *Knotts v. Grafton City Hosp.*, 786 S.E.2d 188, 195 (W. Va. 2016). This "but for" factor is considered "merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination." *Barefoot*, 457 S.E.2d at 161; *Nestor v. Bruce Hardwood Floors, L.P.*, 558 S.E.2d 691, 694 (W. Va. 2001) ("[T]he showing the plaintiff must make as to the elements of the prima facie case in order to defeat a motion for summary judgment is 'de minimis.'") (quoting Syl. Pt. 4, in part, *Hanlon v. Chambers*, 464 S.E.2d 741 (W. Va. 1995)).

Once the prima facie case is established, the burden of production shifts to the defendant to offer a "legitimate, nondiscriminatory reason for the challenged employment action." *Barefoot*, 457 S.E.2d at 160. After this, the plaintiff is afforded the opportunity to show that the defendant's discriminatory reason is merely pretextual. *Id*. A reason is considered pretextual when it is "an ostensible reason or motive assigned as a color or cover for the real reason or motive." *W. Va. Inst. of Tech. v. W. Va. Human Rts. Comm'n*, 383 S.E.2d 490, 496 (W. Va. 1989). A pretextual reason is one that is "not 'the true reason for the decision[.]'" *Mayflower Vehicle Sys., Inc. v. Cheeks*, 629 S.E.2d 762, 773 (W. Va. 2006) (quoting *Conaway*, 358 S.E.2d at 430). Plaintiffs can show that a defendant's reason is pretextual through the use of direct or circumstantial evidence. *Id.* "[W]here pretext is shown, discrimination may be inferred." *Id.*

A plaintiff can also prove discrimination through a "mixed motive analysis," which "applies where the employer articulates a legitimate nondiscriminatory reason for its decision which is not pretextual, but where the complainant demonstrates that a discriminatory motive nonetheless played a significant part in the employer's adverse decision against the complainant." *Id.* If a plaintiff can show that their protected status played a role in the adverse employment decision, "the burden then shifts to the employer to prove by a preponderance of the evidence that the same decision would have been made in the absence of the discriminatory motive." *Id.* (citing *Barefoot*, 457 S.E.2d at 162 n.16, 164 n.18).

Plaintiff raises both pretext and mixed motive to explain Defendant's reasoning for his termination, and thus the Court will address both analyses.

1. **Plaintiff's *prima facie* case of age discrimination**

Plaintiff's burden to establish a *prima facie* case of discrimination is a "de minimis" one. *Nestor*, 558 S.E.2d at 694. Plaintiff must first show that he is a member of a protected class, which he does here, as he is over 40 years old. *See Pl.'s Dep.*, ECF No. 32-3, at 40. Next, Plaintiff must point to an adverse employment action, which he does, as he was terminated in February of 2020. *See id.* at 39. He also argues that his receipt of a poor performance warning in February of 2019 constituted an adverse employment action. However, an adverse employment is an act that adversely affects the "terms, conditions, or benefits" of one's employment. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 650–51 (4th Cir. 2002) (citing *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001)); *Burke v. Wetzel Cnty. Comm'n*, 815 S.E.2d 520, 533 (W. Va. 2018) ("Our law clearly makes it unlawful to discriminate or retaliate against individuals…in regard to the *terms, conditions, or privileges of employment*. The Human Rights Act declares it unlawful for an employer to discriminate against an individual with respect to *compensation, hire, tenure,*

*terms, conditions, or privileges of employment*.") (internal quotations omitted) (emphasis added); *see* W. VA. CODE § 5-11-9(1) ("It shall be an unlawful discriminatory practice… [f]or any employer to discriminate against an individual with *respect to compensation, hire, tenure, terms, conditions or privileges of employment* if the individual is able and competent to perform the services required.") (emphasis added); *see Michael v. Va. Commonwealth Univ.*, No. 3:18-cv-125, 2019 WL 128236, at *4 (E.D. Va. Jan. 8, 2019) (noting that a negative performance review does not constitute an adverse employment action). The performance warning that was issued to Plaintiff did not directly affect his compensation, hire, tenure, or any other terms, conditions, or privileges of his employment with Defendant. Sparks explained that such warning was not a disciplinary action, but that it was merely a formal documentation of the conversation had with Plaintiff regarding his negative performance. *Sparks' Dep.*, ECF No. 32-7, at 53–54. Thus, the performance warning does not constitute an adverse employment action. The operative performance action for the Court's analysis is his termination, which occurred in February of 2020.

The Court must next determine whether "but for" Plaintiff's protected status, the adverse employment action—his termination—would not have occurred. *Conaway*, 358 S.E.2d at 429. Again, Plaintiff has only to establish an inference of discrimination to meet this element of the *prima facie* case. *Barefoot*, 457 S.E.2d at 161. "What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." *Conaway*, 358 S.E.2d at 429–30. The evidence that links an adverse employment action to a plaintiff's status as a member of a protected class could "come in the form of an admission by the employer, a case of unequal or disparate treatment

between members of the protected class and others by the elimination of the apparent legitimate reasons for the decision, or statistics in a large operation which show that members of the protected class received substantially worse treatment than others." *Id.* at 430. While this list is neither exclusive nor exhaustive, Plaintiff here cannot point to evidence beyond his own, self-serving testimony to establish a nexus between his termination and his status as a protected class. *See Campion v. W. Va. Dep't of Educ.*, No. 15-0689, 2016 WL 3141580, at *4 (W. Va. 2016) (quoting *Williams v. Precision Coil*, 459 S.E.2d 329, 338 n.14 (W. Va. 1995) (discussing how self-serving testimony, without factual support in the record, cannot defeat a motion for summary judgment)). The Court will address each argument Plaintiff makes.

    a. Repeated questioning about Plaintiff's age

Plaintiff asserts that Assistant Chief Engineer Ed Sparks, who was his supervisor between 2012 and 2017, repeatedly questioned him about his age and about his expectations for his date of retirement. *See Pl.'s Dep.*, ECF No. 32-3, at 42–43. Plaintiff specifically refers to a conversation he had with Sparks in 2019, just a few weeks before he received a poor performance warning. During this conversation, Plaintiff alleges that he informed Sparks that he did not plan to retire at age 60, as he says is common practice, but that he planned to retire at age 67. *Id.* at 43. He wanted to maximize his pension plan, which he could not do if he retired at age 60, as he had not worked with Defendant for 30 years. *Id.* at 44. After he told Sparks about his plans in 2019, he alleges that Sparks became angry, that his face turned red, and that he left the Bridge Shop. *Id.* at 46. He argues that the questioning of his age and his retirement plans, coupled with Sparks' alleged reaction to his plans, gives rise to an inference that he was terminated because of his age. *See id.* at 31.

However, the statements that Plaintiff alleges demonstrate a nexus between his protected status and his termination occurred roughly one year prior to his termination. This lapse in time

negates any inference of a causal connection between the alleged statements and Plaintiff's termination.[1] *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998); *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) ("Although there is no 'bright-line rule' for temporal proximity, courts within our Circuit have found that shorter lapses of time similar to the three-month period at issue in the case before us are insufficient to infer a causal relationship without other evidence of a causal link."). The Court also notes that, according to Plaintiff, Sparks questioned him about his age for many years prior to his termination. It is puzzling how Plaintiff can argue both that the questioning had occurred for years, yet it was not until 2020 that Defendant acted on this alleged animus and terminated Plaintiff based on illegal discrimination.

Plaintiff also cannot establish a prima facie case of age discrimination because the mere questioning of an employee's age or plans to retire does not itself amount to an inference of discrimination. Other courts have held that employers have a reasonable interest in the future plans of their employees, and "it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct." *Dodson v. Conway Hosp., Inc.*, No. 4:17-cv-1846-RBH-TER, 2019 WL 2127060, at *6 (D.S.C. Jan. 29, 2019) (citing *Kearns v. Northrop Grumman Sys. Corp.*, No ELH-11-1736, 2014 WL 2170781, at *17 (D. Md. May 23, 2014)); *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 724 (6th Cir. 2012) ("[Q]uestions concerning an employee's retirement plans do not alone constitute direct evidence of age discrimination."); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (noting that questions about a plaintiff's retirement "do not amount

---

[1] Plaintiff cites to the case *McGray v. Pee Dee Reg'l Transp. Auth.*, 263 F. App'x 301 (4th Cir. 2008) for the proposition that an isolated comment can constitute evidence of discrimination—even if not contemporaneous with the termination—if the comment is causally related to the discharge decision-making process. However, Plaintiff misapprehends this case. The quote that Plaintiff attributes to the *McGray* court is found in a parenthetical of a citation to a Seventh Circuit case, *Sheehan v. Donlen Corp.*, 173 F.3d 1039 (7th Cir. 1999), and this Court is not bound by, nor persuaded by, this dicta. It is also worth noting that both *McGray* and *Sheehan* involve contemporaneous comments.

to evidence" that age was a motivation for plaintiff's termination); *see Rand v. Mannesmann Rexroth Corp.*, No. Civ. A. 01-3564, 2002 WL 550396, *5 (E.D. Pa. Apr. 15, 2002) ("Simply asking an employee his or her age, with nothing more, does not raise an inference of discrimination." (citing *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 818 (5th Cir. 1993)); *see Moore*, 990 F.2d at 818 (discussing that questions about age and retirement plans did not show a discriminatory intent). This Court agrees. The mere questioning of an employee's age and their plans for retirement alone does not support to an inference of discrimination.

While Plaintiff does allege that Sparks appeared to be angry by his decision to retire at age 67, this still does not create an inference of discrimination. The conduct that must accompany questions about retirement must be sufficiently egregious in order to create an inference of discrimination. *Woythal*, 112 F.3d at 247 (citing to *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (older employee told he could be "cheaply replaced with a younger salesman"); *EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1094 (5th Cir.1994) ("old man," "old and inflexible" and "incapable"); *Corbin v. Southland Int'l Trucks*, 25 F.3d 1545, 1549 (11th Cir. 1994) ("at your age you cannot produce like you once could, and we are going to have to make some kind of adjustment"); *Sischo–Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1108 (9th Cir. 1991) ("old warhorse"); *and Braverman v. Penobscot Shoe Co.*, 859 F. Supp. 596, 601 (D. Me. 1994) (employer provided plaintiff with unsolicited and unwelcome retirement information package and suggested that he retire)). Even a statement by an employer to an employee saying "why don't you retire and make everybody happy" was not enough to constitute evidence of age discrimination. *Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006); *see also Davidson v. Quorum Health Grp., Inc.*, 1 F. Supp. 2d 1321, 1325 (N.D. Ala. 1997) (finding that the statement "[y]ou are old enough to retire, you ought to get out of here," not evidence of a

discriminatory animus). And even if Sparks' reaction—his face turning red—was enough to be sufficient evidence of an inference of discrimination, this alleged incident still occurred a year prior to Plaintiff's termination. The gap between the alleged discriminatory incident and the adverse employment action is simply too large to establish a connection between the two.

Plaintiff's allegations regarding questioning of his retirement plans cannot raise an inference of discrimination, as these questions are reasonable business inquiries that, alone, cannot serve as evidence of discrimination.

b. Defendant cited a "generational shift" as a reason for Plaintiff's termination

Plaintiff also alleges that Defendant's mentioning of a "generational shift" at the Bridge Shop (several of the senior employees at the shop had retired) is evidence that Plaintiff was terminated because of his age. *See Sparks' Dep*., ECF No. 32-7, at 143–44, *see Ex. B*, ECF No. 32-12, at 7 (email from Metcalf referencing the "generational shift"). However, Plaintiff mischaracterizes this testimony. Sparks and Metcalf reference the "generational shift" to describe how talented senior craftsmen carried the brunt of the leadership and responsibilities at the Bridge Shop, and that their departure revealed Plaintiff's deficiencies as a shop manager. *Ex. B*, ECF No. 32-12, at 5, 7 ("It is likely that for many years this employee went unnoticed because he was at a closed shop with long tenured foreman & workforce. In that time there were several senior Foremen, clerks, and other employees that carried the shop and duties would have been minimal due to the employees' performance."). This reference of a "generational shift" does not establish an inference of discrimination; it describes the circumstances under which Plaintiff's deficiencies as a manager became apparent.

c. Defendant had a pattern of retaliating against older employees

Plaintiff asserts that Sparks encouraged him to find out the age and retirement plans of a Mr. Timothy Chapman, another Bridge Shop employee. *Pl.'s Dep.*, ECF No. 32-3, at 123–24. He argues that Sparks pressured him to encourage Chapman to retire, and that this is evidence of a pattern of discrimination. *Id.* at 125–28. But Plaintiff can point to no evidence outside of his own testimony that supports his contention that Chapman was fired because he was "getting up there in age." *Id.* at 128. In fact, Plaintiff himself admits earlier in his testimony that Chapman was fired due to a drinking problem. *Id.* at 50. Plaintiff lacks the personal knowledge of Sparks' true motivation for terminating Chapman. Without further evidence supporting the contention that Defendant routinely retaliated against employees that did not retire quickly, Plaintiff's assertion cannot demonstrate a pattern of retaliation.

Plaintiff also noted that in the last years of his management of the Bridge Shop, he was no longer allowed to attend professional development conferences like he had in the past, whereas other comparable managers for Defendant were allowed to attend. However, he cannot point specifically to any managers who were allowed to attend, nor does he claim that these managers were younger than him. *Id.* at 80–81. Further, he indicates that the managers that were allowed to attend meetings were engineering managers, while he was a manufacturing manager. *Id.* at 80. In his comments on the 2019 Performance Review, he notes that no one went to conferences in 2018, since the upper management shift. *Ex. B*, ECF No. 32-12, at 17. This unsupported claim that Plaintiff was kept from attending conferences is not sufficient evidence of disparate treatment, as the Court cannot see how there is any connection between Plaintiff having been denied attending conferences and the assertion the Defendant terminated Plaintiff based on his age.

d. *Conaway* factors

Turning to factors articulated by the *Conaway* court, Plaintiff cannot produce evidence to support his *prima facie* case. *See Conaway*, 358 S.E.2d at 430. Plaintiff does not provide evidence that Defendant admitted to terminating him due to his age. In fact, all internal communications produced relating to Plaintiff's termination cited poor performance reasons for the termination. *See Ex. B*, ECF No. 32-12, at 2 (performance review submission discussing how Plaintiff has not met the expectations of a plant manager); *id.* at 5 (an email from Sparks to Gravelle, describing Plaintiff's delegation of a significant portion of his duties and lack of mastery of the job); *id.* at 7–9 (an email from Metcalf to Sparks and Gravelle describing Plaintiff's insufficient management, highlighting his lack of accountability, lack of interest in his job, poor communication skills, lack of necessary skills, and lack of discipline of the employees, in addition to the documentation of several incidents). Plaintiff even admits that he has seen no emails or communications where his age or retirement are mentioned by either Sparks or Metcalf. *Pl.'s Dep.* ECF No. 32-3, at 48. It is clear from these communications that Plaintiff's age was in no way a factor in his termination.

It is also worth noting that Sparks, who was the decision-maker in Plaintiff's termination, is 49 years old and therefore also a member of the same protected class as Plaintiff. This fact creates an inference against discrimination. *McNeal v. Montgomery Cnty., Md.*, 307 F. App'x 766, 775 (4th Cir. 2009). Further, all of Sparks' six direct reports are over 40-years old, while two are over 60. *Gravelle's Dec.*, ECF No. 32-8, at 1. The average age of his direct reports is 55-years old. *Id.* Similarly, eight of Metcalf's direct reports are over 40-years old, two are over 50-years old, while one is over 60-years old. *Id.*

As was previously described by this court, Plaintiff's unsupported claim that he was kept from attending conferences does not show disparate treatment. There is no connection between Plaintiff's inability to attend conferences and his termination. Additionally, there is no evidence in

the record that demonstrates that Defendant treated a younger, similarly situated employee differently that Plaintiff was treated. Nor can Plaintiff point to statistical evidence of unequal treatment by Defendant. Plaintiff cannot even identify if the person who replaced him as manager of the Bridge Shop is younger than he is. Plaintiff cannot produce evidence to support his *prima facie* case of age discrimination.

2. **Defendant has a non-discriminatory reason for terminating Plaintiff**

Even if the evidence Plaintiff points to did establish a *prima facie* case of age discrimination, it is clear that Defendant has a non-discriminatory reason for terminating Plaintiff that cannot be shown to be pretextual.

Defendant points to well-documented reasons for its termination of Plaintiff. A defendant's nondiscriminatory reason "need not be a particularly good one," but "can be any other reason except that the plaintiff was a member of a protected class." *Conaway*, 358 S.E.2d at 430. Here, Defendant can point to several documented instances of Plaintiff's poor performance as the manager of the Bridge Shop. *See Ex. B*, ECF No. 32-12, at 2, 5, 7–9 (describing Plaintiff's lack of management skills, poor communication, and delegation of duties, and lack of responsibility as reasons for his termination); *see Sparks' Dec.* ECF No. 32-9, ¶ 9. These reasons serve as the required non-discriminatory reason for Plaintiff's termination. *See Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision.").

3. **Plaintiff cannot demonstrate that Defendant's non-discriminatory reason is pretextual**

To counter Defendant's non-discriminatory reason for his termination, Plaintiff must point to some direct or circumstantial evidence that Defendant's reasons are pretextual. *Skaggs v. Elk Run Coal Co., Inc.*, 479 S.E.2d 561, 583 (W. Va. 1996). An "employee must prove that the employer did not act as it did because of its offered explanation." *Id.* at 584. Plaintiff must point to some evidence that refutes the "articulated, legitimate reasons motivated the employer." *Id.* Plaintiff's "failure to come forth with evidence rebutting the defendant's explanation may entitle the defendant to judgment." *Barefoot*, 457 S.E.2d at 160 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255–56 (1981)). Further, "self-serving assertions without factual support in the record will not defeat a motion for summary judgment." *Campion*, 2016 WL 3141580, at *4; *McCullough Oil, Inc. v. Rezek*, 346 S.E.2d 788, 797–98 (W. Va. 1986). "[A] nonmoving party cannot avoid summary judgment merely by asserting that the moving party is lying. Rather, Rule 56 requires a nonmoving party to produce specific facts that cast doubt on a moving party's claims or raise significant issues of credibility." *Williams*, 459 S.E.2d at 338 n.14. A plaintiff's "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Id.* at 337 (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). In fact, where a plaintiff has failed to point to any evidence outside their "own unsubstantiated opinion and conclusory speculation," the Supreme Court of Appeals of West Virginia has granted summary judgment for the defendant. *Gibson v. Little Gen. Stores, Inc.*, 655 S.E.2d 106, 109–10 (W. Va. 2007).

To support the proposition that Defendant's non-discriminatory reason for Plaintiff's termination was pretextual, Plaintiff raises several arguments that the Court will now address.

a. Plaintiff's performance was good, not poor

Plaintiff argues that his performance was not poor, and thus, Defendant's reliance on this reasoning is evidence of pretext. He further asserts that he was not counseled or informed with respect to any performance issues. But there is documentation of Plaintiff's performance issues in the record that dispute Plaintiff's contentions. Plaintiff received a negative performance review of "Sometimes Achieves Expectations" for the 2018 year. *Ex. B*, ECF No. 32-12, at 23. A "Sometimes Achieves Expectations" rating is a negative rating that is given to less than 6% of employees in the Design, Construction & Capacity department. *Gravelle's Dec.*, ECF No. 32-8, ¶ 3. It represents a score of a two out of five. *Sparks' Dep.*, ECF No. 32-7, at 48. In this review, Metcalf indicated that he would like to see Plaintiff improve the shop operations and scheduling. *Ex. B*, ECF No. 32-12, at 23–24. He also noted that he wanted Plaintiff to focus on self-improvement with several job-related skill sets, and that he wanted to see direct instructions and communications with the shop employees. *Id.* at 23–24.

Plaintiff was then issued a performance warning in February of 2019. Although Plaintiff argues that this warning was composed of "made up, trumped-up stuff that you can't verify," the warning document contained five concrete areas of improvement identified by Defendant. *See Ex. B*, ECF No. 32-12, at 10–11. Plaintiff asserts that this warning contained no verifiable performance criteria and was too generalized, but it is apparent that the five areas of improvement, although not containing specifically objective standards, are areas of performance easily observed and reviewed by a supervisor. The areas of improvement were also put into context by the many instances where Sparks reached out to Plaintiff to address issues with shop and employee management. Additionally, the performance warning noted that "failure to meet the level of performance identified in this document will result in further disciplinary action up to and including termination of your employment." *Id.* at 11. Plaintiff even signed this document, confirming that he received

-18-

and understood its contents. *Id.* It is apparent to the Court that Plaintiff's claim that he was not counseled at all regarding performance issues before his termination cannot be supported. His signature on the document—which states at the top that the letter was about the "counseling session regarding expectations as plant manager of Barboursville Bridge Shop"—directly refutes this contention.

Further, after the poor performance review, both Metcalf and Sparks communicated with Plaintiff about continuing issues with his management of the Bridge Shop. For example, in September of 2019, Sparks emailed Plaintiff regarding issues with painting procedure by the Bridge Shop that were supposed to have already been eliminated. *Ex. B*, ECF No. 32-12, at 29–30. Plaintiff did not follow up with the answers requested, and Sparks had to reach out again to get clarity on the painting issues. *Id.* Both lack of communication and accountability concerning quality issues were areas of improvement identified by the February 2019 performance warning. *Id.* at 10. In November of 2019, Sparks sent an email to Plaintiff expressing concerns about costs with the Bridge Shop. *Id.* at 26. Then, in January of 2020, Metcalf sent an email to Plaintiff expressing continued frustrations with respect to issues with overtime documented by Bridge Shop employees. *Id.* at 28. Maintaining the shop schedule was an area of improvement identified by the 2019 performance warning. *Id.* at 11.

Plaintiff then received another negative annual performance review of "Sometimes Achieves Expectations" for the 2019 year. *See id.* at 17. In the review, Metcalf indicated that he wanted to see more effort from Plaintiff with respect to managing the overtime schedule and shop costs. *Id.* at 17–18. This record indicates that Plaintiff's performance since his poor performance warning, and since his last negative performance review, had not improved. Metcalf even compiled a list of all of Plaintiff's performance issues with supporting documentation. *Id.* at 25. It

is clear that Plaintiff had been aware of his poor performance issues since his 2018 performance review and that the continued concerns communicated by Sparks and Metcalf did not indicate that these issues had been ameliorated. There is material evidence—the performance warning, the documented communications between Sparks, Metcalf, Gravelle, and the communications to Plaintiff himself—that undercuts his testimony that he was performing well and was unaware of any performance issues.

Plaintiff's unsubstantiated assertions that he was performing well—assertions which fly in the face of the evidence to the contrary documented in the record—cannot refute Defendant's legitimate reason and serve as proof of pretext. *See Evans*, 80 F.3d at 960 (holding that the plaintiff's unsubstantiated asserts about her own qualifications could not disprove the employer's explanation); *Goldberg v. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (finding that the plaintiff's "own naked opinion, without more" is not enough to establish a prima facie case, and that "conclusory assertions" about the employer's "state of mind and motivation are in dispute are not enough to withstand summary judgment."). Plaintiff's assertions here are similar to those of the plaintiff in *Rayyan v. Virginia Department of Transportation*, where that plaintiff alleged he was discriminated against because of his race and religion. 719 F. App'x 198, 204 (4th Cir. 2018). The plaintiff in *Rayyan* argued that he was performing his job satisfactorily, but the Fourth Circuit noted that "the record did not support [plaintiff's] contention." The court went on to cite counseling memos and comments made regarding issues with plaintiff's performance to show that the record did not support the plaintiff's assertion. *See id.* Such is the case here. The record is rife with email documentation and complaints about Plaintiff's performance. Such a record cannot support the notion that Plaintiff was performing his job well. *See Field v. Verizon Servs. Corp.*, 493 F. App'x 371, 377 n.6 (4th Cir. 2012) (describing that "[o]ther than offering her own position

and speculation," the plaintiff did not present evidence discrediting her employer's reasoning); *see also Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006) (describing how plaintiff's affidavit where she indicated that she believed she was acting professionally cannot create a dispute of material fact because the undisputed evidence in the record showed a pattern of unprofessional misconduct).

Plaintiff also relies on the deposition testimony of Dr. Donna Kulick, a vocational expert, to attempt to raise an issue of fact with respect to his job performance. He asserts that, according to her testimony, his recent performance reviews showed that he had been performing his job well. But this is a mischaracterization of her testimony. She indicated that, according to his performance reviews, he did "fine," and that his reviews were "consistent with the job duties of the position he was holding." *Kulick Dep.*, ECF No. 33, at 22. Importantly, she then details that his later performance reports indicated that there were "some problems." *Id.* This testimony accurately reflects the fact that Plaintiff received negative performance reviews in 2018 and 2019 and does not provide any evidence that Defendant's reason for termination—Plaintiff's poor performance—was pretextual. It is also worth noting that Dr. Kulick did not have the expertise on how Defendant conducted its evaluations and how they are interpreted by Defendant to reflect an employee's performance.

Plaintiff then asserts that he was told by Metcalf two weeks before his termination that he was performing "well" and that the upper management were totally satisfied with his performance. This argument misrepresents Plaintiff's own testimony. Plaintiff testified in deposition that Metcalf told him he was satisfied with Plaintiff two weeks prior to his *2019 performance warning*—not two weeks before his termination. *Pl.'s Dep.*, ECF No. 32-3, at 31. Thus, Plaintiff's

argument that he was told he was doing well just before his termination is entirely unsupported and not evidence of pretext.

    b.   <u>Defendant relied on unsubstantiated complaints about Plaintiff in its decision to terminate</u>

Plaintiff also asserts that his termination was based in part of allegations of favoritism and retaliation made by Bridge Shop employees and additional employee complaints, all which were shown to be unsubstantiated, and that this demonstrates pretext. However, Sparks pointedly clarified his testimony to reflect that Plaintiff's termination was "not specifically" based on these allegations (*Sparks' Dep.*, ECF No 32-7, at 85), but that this complaint provided background material on Plaintiff's overall performance. *Id.* at 79. These complaints against Plaintiff demonstrate his poor dialogue and relationship with staff, which were areas of improvement addressed by the performance warning. The criticisms raised by these employees were consistent with the performance deficiencies already documented by Sparks and Metcalf.

    c.   <u>Defendant did not follow its own termination policy and procedures</u>

Lastly, Plaintiff argues that Defendant violated its own policy and procedures when it terminated Plaintiff. Plaintiff asserts that Defendant's guidelines require that a human rights business partner provide timely and specific feedback. *Gravelle's Dep.*, ECF No. 32-5, at 49. The business partner in question here would be Metcalf. *Id.* at 49–50. Plaintiff alleges that he never got this requisite timely and specific feedback, and that because of this, he never knew that there were ongoing issues with his performance. This violation of the policy, Plaintiff argues, shows an inference of hostility against him. But Plaintiff's contention is entirely unsupported by the record. Gravelle's testimony noted that the documented feedback given to employees with performance issues can be in the form of an email. *Id.* at 50. As already discussed, the record is rife with

documented and specific issues that Metcalf and Sparks raised with Plaintiff via email between the time of his performance warning in 2019 and his termination in 2020. These issues raised give sufficient notice to Plaintiff regarding his deficiencies and the expectations Defendant had for him in his role.

Plaintiff can point to no evidence in the record, apart from his own, self-serving testimony, that Defendant's articulated reasoning for termination was pretext.

4. **Plaintiff cannot produce evidence to support a mixed motive theory of discrimination**

Under a mixed motive theory of discrimination, a plaintiff is required to show that "a discriminatory motive… played a significant part in the employer's adverse decision against the complainant." *Mayflower Vehicle Sys.*, 629 S.E.2d at 773. When a plaintiff establishes that their protected status contributed to a Defendant's decision to take an adverse employment action, the burden shifts to the Defendant to prove that the same decision "would have been made in the absence of the discriminatory motive." *Id.*

Plaintiff can point to no documented evidence in the record indicating that Defendant factored his age into his termination. It is clear from the documented performance reviews, the 2019 performance warning, the emails to Plaintiff regarding issues with his management of the Bridge Shop, and the emails between Sparks, Metcalf, and Gravelle, that, no matter Plaintiff's age, he would have been terminated for his poor management of the Bridge Shop.

## IV. CONCLUSION

Plaintiff failed to establish a prima facie case demonstrating that he was discriminated against by Defendant on the basis of his age. Even if this Court found that he did, Defendant raised a non-discriminatory reason for his termination—his poor performance—that Plaintiff cannot credibly argue is pretext. Plaintiff also cannot point to evidence in the record showing that his age

was a significant factor in his termination, or that Defendant would not have terminated him absent his status as a protected class. Thus, this Court finds that Plaintiff has not met his burden and his claim must fail at the summary judgment stage.

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. ECF No. 31. Accordingly, Plaintiff's claim against Defendant is **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        January 31, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE